UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X

DOUGLAS ROTHENBERGER,

                Plaintiff,                    **REPORT AND RECOMMENDATION**
                                                    **06 CV 868 (NGG)(LB)**

        -against-

NEW YORK CITY POLICE DEPARTMENT
AND BORO MANAGER SHERMAN
RICHARDS, SCHOOL SAFETY DIVISION,

                Defendants.
------------------------------------------------------X

**BLOOM, United States Magistrate Judge:**

        Plaintiff brings this employment discrimination action against the defendants pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA"). Defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1] The Honorable Nicholas G. Garaufis referred this motion to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. §636(b). For the following reasons, it is respectfully recommended that defendants' motion for summary judgment should be granted and plaintiff's complaint should be dismissed.

---

[1] Defendants provided the requisite notice under Local Civil Rule 56.2. See docket entry 30.

**BACKGROUND**

**Introduction**

Plaintiff is employed by the New York City Police Department ("NYPD") as a School

Safety Supervisor ("SSS"). Plaintiff was born on October 26, 1943. See Amended Complaint

("Am. Comp.") at ¶ 7. Plaintiff's amended complaint alleges that defendants discriminated

against him based on his age by abusing the performance evaluation process. Specifically,

plaintiff alleges that because of his performance evaluations, he was ineligible for overtime and

with no overtime, his pension benefits will be less when he retires. Plaintiff also argues that

defendants failed to hear his appeals of these negative performance evaluations and have

wrongfully disciplined him. Finally, plaintiff contends that defendants failed to promote him and

retaliated against him based on his complaints about age discrimination. Id. Attached pages 1-3

annexed to Am. Comp.

The following facts are not in dispute unless otherwise noted.[2] On February 9, 1994,

plaintiff began to work as a School Safety Officer with the New York City Board of Education.

Deposition of Douglas Rothenberger ("Dep.") at 25 attached as Exhibit B to the Declaration of

---

[2] Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and
Eastern Districts of New York ("Local Rule 56.1") requires a party moving for summary judgment to
submit "a separate, short and concise statement" of the allegedly undisputed material facts, set out in
numbered paragraphs, on which the moving party relies in arguing that there is no genuine issue to be
tried. See Local Rule 56.1(a); see also Gianullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003);
Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 72 (2d Cir. 2001). Defendants filed a 56.1 statement.
Plaintiff did not file a counter-statement under 56.1(b) controverting the facts in defendant's 56.1
statement. As such, the Court may deem the facts in defendants' Rule 56.1 statement admitted. See
Local Rule 56.1(c). However, the Court may not rely solely on the statement of undisputed facts
contained in the Rule 56.1 statement: "[i]t must be satisfied that the citation to the evidence in the record
supports the assertion." Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir.
2004); see Gianullo, 322 F.3d at 143 n.5. Therefore, the Court deems admitted only those facts that are
supported by admissible evidence in the record.

Jonathan Bardavid in Support of Defendants' Motion for Summary Judgment ("Defendants' Exhibit"). On December 20, 1998, the New York Police Department "took over the New York City Board of Education School Safety Unit." Id. Plaintiff was promoted to the position of School Safety Supervisor ("SSS") on December 21, 2001 and was assigned to Patrol Borough Brooklyn North ("PBBN"). Id. at 43, 53. Defendant Commander Sherman Richards is the Borough Manager and was plaintiff's supervisor during plaintiff's entire tenure at PBBN. Defendants' Exhibit V at ¶ 2. Richards is 54 years old. Id.

**Plaintiff's Employment Evaluations**

Plaintiff received a total of 14 performance evaluations while at PBBN–the first on December 6, 2002 and the last on July 20, 2006. Out of the 14 evaluations, 13 were unsatisfactory, with plaintiff's performance rated as "below standards." Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Pl. Opp.") ¶ 4. Although several different supervisors authored plaintiff's performance evaluations, defendant Richards, the Borough Manager, signed off on all of the evaluations.

The first evaluation, on December 6, 2002, was issued while plaintiff was still on probation for the period of December 24, 2001 through November 30, 2002. Defendants' Exhibit C. Plaintiff was rated as "below standards." Id. The evaluation stated that plaintiff "needs constant supervision and guidance" and "constantly calls to inquire about procedures" and is "never sure of himself." Id.

On May 7, 2003, plaintiff was issued an interim performance evaluation for the period December 26, 2002 through April 30, 2003. Defendants' Exhibit D. Plaintiff was again rated

"below standards". Id. The evaluation states that plaintiff "still needs constant guidance and supervision" and "still cannot make decisions on his own." This evaluation recommended "demotion" and noted that "supervisor was given counseling and guidance [but] . . . is not getting acclimated to his job, as expected." Id.

On August 11, 2003, plaintiff was issued an interim performance evaluation for the period May 1, 2003 through August 1, 2003 and again was rated "below standards." Defendants' Exhibit E. This evaluation states that plaintiff "continuously needs supervision and guidance" and again recommended "demotion." Id.

On October 31, 2003, plaintiff was issued an interim evaluation for the period of May 1, 2003 through October 31, 2003. Defendants' Exhibit F. Plaintiff was rated "below standards" and the evaluation states "[supervisor] cannot make decision on his own. Supervisor still needs constant guidance and supervision. Supervisor judgment is very poor. Recommend demotion." Although the evaluation noted that plaintiff "is motivated and shows interest in doing his job," it also noted that "the supervisor does not demonstrate he has the ability to function independently and make his own decisions . . . recommend the supervisor be reassigned and given lesser responsibility." Id.

On May 12, 2004 plaintiff was issued an interim performance for November 8, 2003 through April 30, 2004, in which he was again rated "below standards." Defendants' Exhibit G. The evaluation recommended that plaintiff be placed in a "non patrol" assignment because plaintiff required "constant re-instruction [and] follow-up" and because he "becomes offensive when given directives." Id. The evaluation further states "the supervisor has not demonstrated the ability to manage his area of responsibility adequately. Recommend the supervisor to be

regressed to lesser assignment." Id.

Plaintiff fared no better on his annual performance evaluation, also issued on May 12, 2004. Plaintiff was rated "below standards" and it was recommended that "supervisor be regressed to a lesser assignment." Defendants' Exhibit H.

On August 30, 2004, plaintiff was issued an interim performance evaluation for the period May 11, 2004 through August 1, 2004, which for the first time rates plaintiff as "meets standards" and states that plaintiff is "learning to be more effective . . . [and] recognizes the importance of working as a team player . . . [and] accepts constructive criticism." Defendants' Exhibit I. This evaluation noted plaintiff "has improved overall . . . recommend that employee be retained in current assignment." Id.

On February 1, 2005, plaintiff received an interim performance evaluation for August 2, 2004 through January 1, 2005, in which he was again rated "below standards." Defendants' Exhibit J. This evaluation states plaintiff "needs constant supervision and guidance" and "is resistant to criticism and guidance and becomes argumentative when instructions are given." Id.

On May 24, 2004, plaintiff received a performance evaluation for the period January 4, 2005 through April 4, 2005. Defendants' Exhibit K. This evaluation recommended "demotion" finding plaintiff "possesses poor inter-personal skills," is "resistant to instructions and criticism . . . is loud confrontational and unprofessional [and] need[s] constant follow-up and supervision." Id.

On September 9, 2005, plaintiff was issued an interim performance evaluation for the period of April 5, 2005 through July 5, 2005 which again rated plaintiff "below standards."

5

Defendants' Exhibit L. This evaluation again recommended that plaintiff be demoted. Id. On

October 24, 2005, plaintiff was again rated "below standards" with recommended demotion.

Defendants' Exhibit M. On January 24, 2006, plaintiff was evaluated and rated "below

standards" for the period October 7, 2005 through January 1, 2006. Defendants' Exhibit N. On

May 26, 2006, plaintiff's interim performance evaluation for January 8, 2006 though April 8,

2006 rated plaintiff "below standards" and recommended that plaintiff be removed as a

supervisor finding plaintiff "disruptive," "loud" and "continuously requiring follow-up and

guidance." Id. On July 20, 2006, plaintiff was again evaluated "below standards" for the period

April 9, 2006 through July 9, 2006 and again it was recommended that he be removed as a

supervisor. Defendants' Exhibit P. The evaluation noted plaintiff's "poor interaction and

demeanor [and] loud, disruptive and unprofessional demeanor." Id.

    The parties agree that the thirteen "below standards" performance evaluations did not

result in plaintiff's demotion, suspension or cause plaintiff a loss in pay, but the evaluations did

result in plaintiff becoming ineligible for overtime. Dep. at 108. The parties also agree that the

"policy for PBBN School Safety Division [is] that after an employee received a 'below

standards' evaluation he or she was precluded from performing overtime until he or she achieved

a 'meets standards' on their next performance evaluation." Richards Aff. ¶ 12; Dep. at 134-35.

Therefore, plaintiff was ineligible for overtime based on his "below standards" evaluations. Id.

Plaintiff did however receive overtime for the short period of time after he was rated "meets

standards" on his evaluation in August 2004. Id. Plaintiff was again ineligible for overtime

when he was again rated "below standards" in his subsequent evaluations. Richards Aff. ¶¶14,

15, 16.

6

On every performance evaluation in which he received a "below standards" rating, plaintiff initialed next to the statement "I wish to appeal this performance evaluation." See Defendants' Exhibits C-P. In addition, starting in 2002, plaintiff sent faxes and letters requesting to appeal each of these performance evaluations. Pl. Opp. Exh. 4. Plaintiff's complaint states that he "requested but never received an appeal hearing, per NYPD Administrative Guide 314-12 after receiving ten negative performance evaluations." Am. Comp. ¶ 8. Administrative Guide 314-12 states that an "[a]ppeal must be resolved within thirty (30) days of receipt of request for appeal." Unnumbered Exhibit Annexed to Am. Comp. Although an appeal hearing was held on November 2, 2006, (Pl. Opp. ¶ 19), to date, plaintiff has not received a decision on his appeal. Pl. Opp. Exh. 4.

**The Four Command Disciplines and The Letter of Re-instruction**

In addition to the negative performance evaluations, plaintiff received four command disciplines ("CD") and one letter of re-instruction during his tenure at PBBN. In the first CD, dated April 9, 2004, plaintiff was found guilty of "fail[ing] to supervise his area of responsibility, by not ensuring that School Safety Agent Margaret Desir received her pay check." Defendants' Exhibit Q. Plaintiff accepted the finding and the proposed disciplinary action (a warning). Id. The second CD, issued on January 11, 2005, found plaintiff guilty of not submitting time sheets to his contact persons for the months of September, October, November and December. Defendants' Exhibit T. The recommended disciplinary action was forfeiture of two days vacation. Plaintiff declined to accept the disciplinary action without a statutory hearing. Id. The third CD, issued on April 7, 2005, found plaintiff guilty of submitting "an unscheduled overtime

sheet for overtime that was not authorized." Defendants' Exhibit S. The recommended disciplinary action was forfeiture of two days vacation. Plaintiff declined to accept the disciplinary action without a hearing. Id. The final CD, issued on November 15, 2005, stated that plaintiff acted "discourteous[ly] to a subordinate when he pushed the chair hitting her on the right hip." Defendants' Exhibit R. Plaintiff again declined to accept the disciplinary action without a statutory hearing. Id. On August 10, 2005, plaintiff received a letter of re-instruction, to "correct a deficiency in [plaintiff's] performance, concerning plaintiff's failure to comply with instructions regarding the collection of radios." See Am. Comp. at 5; Unnumbered Exhibit annexed to Am. Comp.; Letter of Re-Instruction.

There was no action taken against plaintiff as a result of these command disciplines. As he declined to accept the disciplinary action, plaintiff suffered no forfeiture of pay, suspension, demotion, loss of vacation days or any other penalty. Dep. at 154-169. In addition, the CDs and the letter of re-instruction did not effect plaintiff's eligibility for overtime. Dep. at 151.

**Promotion**

Plaintiff took and passed the civil service promotional examination and states that he scored "number 1 in the city." Dep. at 137-38. Plaintiff contends that although he scored very high on the examination, he was "not asked until a year and three months later if [he] wanted that position." Id. at 139. However, when plaintiff was offered the position, he declined the promotion explaining that "I had to take into consideration my age, my family, my health benefits, et cetera, and I thought, at that time, that being that the salary of the associates was below that of supervisors, that it wouldn't be beneficial at that time for me to accept the

8

promotion. . ." Id. at 139-140.

## Retaliation

Plaintiff filed a complaint with the Equal Employment Opportunity Commission on May

21, 2005. Thereafter, plaintiff alleges that defendants retaliated against him by giving him

unfavorable performance evaluations and CDs.

## DISCUSSION

## I. Standard of Review

Summary judgment should be granted if the pleadings, depositions, answers,

interrogatories and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law. Fed. R. Civ. P. 56(c). A fact is material if it is one that "might affect the outcome of the

suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "An

issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for

the nonmoving party.'" McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007)

(quoting Anderson, 477 U.S. at 248 ); see also Celotex Corp. v. Cadrett, 477 U.S. 317, 322

(1986); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

"The trial court's function in deciding such a motion is not to weigh the evidence or resolve

issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all

inferences in favor of the non-moving party, a rational juror could find in favor of that party."

Pinto v. Allstate Ins. Co., 221 F.3d 394, 398 (2d Cir. 2000); see also Baker v. The Home Depot ,

9

445 F.3d 541, 543 (2d Cir. 2006) (resolving all ambiguities and drawing all inferences in favor of the nonmoving party on summary judgment).

"[A]n opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e); see Matsushita, 475 U.S. at 586-87 (1986). In other words, the non-moving party must provide "affirmative evidence" from which a jury could return a verdict in its favor. Anderson, 477 U.S. at 257. "Conclusory allegations, conjecture, and speculation ... are insufficient to create a genuine issue of fact." Niagra Mohawk Power Corp. v. Jones Chemical, Inc., 315 F.3d 171, 175 (2d Cir. 2003) (quoting Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998)). Moreover, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." Id. (quoting Anderson, 477 U.S. at 252). "It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'" Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).


## II. Plaintiff's Discrimination Claims Against Sherman Richards

It is well settled that individuals may not be held liable for claims asserted under Title VII. See Mandell v. County of Suffolk, 316 F.3d 368, 377 (2d Cir. 2003) ("under Title VII individual superiors are not subject to liability."); Tomka v. Seiler Corp., 66 F.3d 1295, 1317 (2d Cir. 1995). The statutory definition of "employer" in the ADEA mirrors the definition in Title

10

VII, compare 29 U.S.C. § 630(b) with 42 U.S.C. § 2000e(b), and the analysis of claims under these statutes is generally the same. See, e.g., Wanamaker v. Columbian Rope Co., 108 F.3d 462, 465 (2d Cir. 1997) (retaliation claims brought under ADEA analyzed in the same way as claims under Title VII). Courts in this jurisdiction have consistently dismissed Title VII and ADEA claims asserted against individual defendants. See Farulla v. New York School Const. Authority, 277 F. Supp. 2d 140, 141 (E.D.N.Y. 2003) (definition of "employer" same under Title VII and ADEA). For these reasons, plaintiff's claims against defendant Richards should be dismissed.

## III. Plaintiff's Failure To Promote Claim

Plaintiff alleges that defendants discriminated against him based on his age when they failed to promote him to the Associate Supervisor School Security position. In order to establish a *prima facie* case of discrimination for failure to promote under the ADEA, a plaintiff must show that he: (1) is a member of a protected class; (2) was qualified for the position at issue; (3) was denied the position; and (4) that the circumstances of the adverse employment decision give rise to an inference of discrimination. See Mandell, 316 F.3d at 377 (applying the framework set forth in McDonald Douglas Corp. v. Green, 411 U.S. 792 (1973)). Plaintiff concedes that on March 23, 2006, defendant offered him and he *declined* the promotion to Associate Supervisor School Security. Dep. at 139-40. Plaintiff fails to demonstrate that the 14 months between the date he passed the civil service promotional examination and the date he was offered the promotion is tied to his age in any way. Quite simply, plaintiff was offered the position and he turned it down. Plaintiff cannot establish an essential element of a *prima facie* case and

therefore, plaintiff's failure to promote claim should be dismissed.

## IV. Plaintiff's Disparate Treatment Claims

"The ultimate issue in an ADEA case is whether the plaintiff has proved by a preponderance of the evidence that [his] age played a motivating role in, or contributed to, the employer's decision. Because direct evidence of discrimination--a 'smoking gun' attesting to a discriminatory intent, is typically unavailable, plaintiffs and courts ordinarily proceed by way of the three-part burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed.2d 668 (1973). " Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 77 (2d Cir. 2001) (internal citations and quotations omitted); see also D'Cunha v. Genovese/Eckerd Corp., 479 F.3d 193, 195 (2d Cir. 2007) ("Claims under the ADEA are governed by the three-step burden-shifting framework set forth in McDonnell Douglas Corp. v. Green").

Under McDonnell Douglas, a plaintiff must establish a *prima facie* case of discrimination. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000). "An ADEA plaintiff meets that burden by showing that (1) []he was within the protected age group, (2) []he was qualified for [the] position, (3) []he suffered an adverse employment action, and (4) that action took place in circumstances giving rise to an inference of discrimination." Woodman v. WWOR-TV, Inc., 411 F.3d 69, 76 (2d Cir. 2005) (citing to Schnabel v. Abramson, 232 F.3d 83, 87 (2d Cir. 2000)). Plaintiff's burden at the *prima facie* stage is *de minimis*. Tomassi v. Insignia, 478 F.3d 111, 114 (2d Cir. 2007).

If plaintiff succeeds in establishing a *prima facie* case, a presumption of discrimination arises and the burden shifts to the defendant to proffer a legitimate, nondiscriminatory reason for

the adverse employment action. Id. If the defendant offers such a reason, the presumption of discrimination created by the *prima facie* case drops out, and the defendant "will be entitled to summary judgment -- unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." James v. N.Y. Racing Ass'n, 233 F.3d 149, 154 (2d Cir. 2000).

In the third stage of the three-part burden-shifting analysis, the plaintiff "must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons but were a pretext for discrimination." Reeves, 530 U.S. at 142. However, the Second Circuit has pointed out that "[t]o allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases." Meiri v. Dacon, 759 F.2d 989, 997 (2d Cir. 1985). "In short, the ultimate burden rests with the plaintiff to offer evidence 'sufficient to support a reasonable inference that prohibited [age] discrimination occurred.'" Woodman, 411 F.3d at 76 (quoting James, 233 F.3d at 156).

## Plaintiff's *Prima Facie* Case

Plaintiff is over the age of forty and the Court assumes, *ad arguendo*, that plaintiff is qualified to perform his job. Therefore, plaintiff satisfies the first two prongs of his *prima facie* case. However, plaintiff still must establish that he suffered an adverse employment action under circumstances that give rise to an inference of discrimination.

For an employer's action to be adverse, it must do more than dissatisfy an employee. Plaintiff must allege a "materially adverse change in the terms and conditions of [his or her]

employment." Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (internal quotation marks and citation omitted). Examples of what constitutes an adverse employment action include "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." Id. As an initial matter, plaintiff concedes that he suffered no adverse action as a result of the four command disciplines and the letter of re-instruction he received. Dep. at 154-168. Therefore, plaintiff's claims regarding these actions should be dismissed.

Defendants argue that plaintiff's 13 "below standards" performance evaluations do not constitute adverse employment action. However plaintiff's "below standards" ratings made plaintiff ineligible for overtime. This ineligibility not only effected plaintiff's salary, but will effect his pension, since plaintiff's pension will be based on a percentage of his overall salary. Denying an employee the opportunity to work overtime can constitute a materially adverse employment action. See Gentile v. Potter, 509 F. Supp.2d 221, 241 (E.D.N.Y. 2007) ("denial of overtime is a materially adverse action"). Therefore, plaintiff's claims regarding his negative performance evaluations and defendants' failure to timely hear his appeals will be considered adverse employment action for the purposes of the Report.

However, plaintiff sets forth no facts to establish the fourth prong of the *prima facie* case–facts giving rise to an inference of discrimination based on age. Although plaintiff's *prima facie* burden is *de minimis,* he fails to demonstrate that his negative performance evaluations were connected in any way to his age. Therefore, defendants' motion for summary judgment should be granted as plaintiff fails to establish a *prima facie* case of age discrimination.

14

**Defendants' Legitimate Non-Discriminatory Reason for its Action**

Even assuming, *ad arguendo*, that plaintiff had established a *prima facie* case, defendants

have articulated a legitimate non-discriminatory reason for why plaintiff was ineligible for

overtime: he was rated "below standards" on his performance evaluations. Plaintiff alleges that

his 13 negative performance constitute discrimination with respect to the terms and conditions of

his employment. However, the record amply demonstrates that plaintiff was given numerous

non-discriminatory reasons why his performance was consistently rated "below standards." The

evaluations reflect that plaintiff required an inappropriate level of supervision and oversight, and

that plaintiff made no progress in the years in question. In addition to the performance

evaluations, defendants submit Richards' affidavit which states:

> Plaintiff was assigned to PBBN from in or about December 2001 until in or about
> September 2006 as a School Safety Supervisor ("SSS"). . . [P]laintiff's job
> performance during this time, except for a brief period from May of 2004 through
> August 2004 was extremely poor. . . While plaintiff was assigned to PBBN he was
> supervised by five different supervisors. . . [P]laintiff was not a competent
> employee. Plaintiff's supervisors indicated to me that plaintiff was in constant
> need of supervision and guidance. This was particularly problematic in that
> plaintiff himself was the supervisor of approximately 40 employees. As plaintiff
> was not able to perform his job without constant guidance this meant that his
> subordinates were not being properly trained, guided and supervised by the
> plaintiff. Additionally, all of plaintiff's supervisors had to closely monitor his
> performance and they all indicated to me that plaintiff failed to improve. Indeed I
> was informed that the plaintiff became hostile and defensive when offered
> constructive criticism by his direct supervisors. . . . I personally observed the
> plaintiff's job performance. . . . The plaintiff did not follow the chain of
> command, could not follow simple instructions and despite numerous efforts to
> provide him guidance simply failed to improve. In sum, plaintiff was not a good
> supervisor and was rated below standards accordingly.

Richards Aff. at ¶¶ 4-10. Defendants have proffered legitimate non-discriminatory reasons for

plaintiff's 13 "below standards" evaluations; "namely plaintiff deserved the review[s] he got."

Hunter v. St. Francis Hosp., 201 F. Supp. 2d 534, 544 (E.D.N.Y. 2003). In addition, it is

undisputed that defendants' policy made any employee who received a "below standards"

evaluation ineligible for overtime until he or she achieved a "meets standards" evaluation. Dep.

at 134-35, Richards Aff. at ¶ 4. In fact, as a supervisor, plaintiff himself denied the overtime

requests of six employees because they were rated "below standards." Plaintiff avers, "I

remember some of them got very upset when they had the hearing in front of me and Commander

Richards . . . because they were denied overtime." Dep. at 136.

**Pretext**

Thus, even if plaintiff had established a *prima facie* case of age discrimination,

defendants have demonstrated a legitimate, non-discriminatory reason why plaintiff was

ineligible for overtime. In order to defeat defendants' motion for summary judgment, plaintiff

must demonstrate that defendants' reason for taking the adverse action against him was

pretextual. See, e.g., Reeves, 530 U.S. at 143. Plaintiff does not demonstrate that defendants'

reason was pretextual. Moreover, plaintiff offers no evidence that age was a motivating factor in

why he was ineligible for overtime. Plaintiff simply states his belief that defendants' actions

were due to his age. However, plaintiff's statements of his feelings, beliefs and opinions are

insufficient to sustain his claim of discrimination. It is well established that a "plaintiff's

subjective disagreement with [his performance] reviews is not a viable basis for a discrimination

claim. Valentine v. Standard & Poor's, 50 F. Supp. 2d 262, 284 (S.D.N.Y. 1999). "Whether job

performance was satisfactory depends on the *employer's* criteria for the performance of the

job—not the standards that may seem reasonable to the jury or judge." <u>Thornley v. Penton Publ'g Inc.</u>, 104 F.3d 26,29 (2d Cir. 1997) (emphasis supplied).

Plaintiff identifies a colleague, Natasha Fleming, an employee who received overtime despite a "below standards" evaluation. Plaintiff argues that Ms. Fleming was treated more favorably based on discrimination. Opposition ¶ 12. However, a plaintiff must show that he was "similarly situated in all material respects to individuals with whom he seeks to compare [himself]." <u>Graham v. Long Island R.R.</u>, 230 F.3d 34, 39 (2d Cir. 2000). Borough Manager Richards avers:

> SSA Fleming was a subordinate of the plaintiff. She received a "below standards" evaluation from the plaintiff solely due to her attendance. It was brought to my attention that the plaintiff had miscalculated SSA Fleming's attendance. As the below standards evaluation was incorrect SSA Fleming was permitted to perform overtime while her "below standards" evaluation was corrected. The decision to award SSA Fleming overtime was not based on her age, rather it was based upon a general sense of fairness as her below standards evaluation was incorrect and due to a miscalculation of her attendance.

Richards Aff. ¶ 20. Plaintiff was not similarly situated to Fleming, and therefore he cannot sustain his claim that he was treated less favorably than she based on his age. <u>See Shumway v. United Parcel Serv. Inc.</u>, 118 F.3d 60, 64 (2d Cir. 1997) ("[t]o be 'similarly situated' the individuals with whom [plaintiff] attempts to compare herself must be similarly situated in all material aspects"); <u>Cruse v. G & J USA Publ'g</u>, 96 F. Supp. 2d 320, 330 (S.D.N.Y. 2000).

At his deposition, plaintiff failed to identify *any* basis for his claims of age discrimination. No discriminatory remark was made by any of the supervisors who issued plaintiff's command disciplines, evaluations or the letter of re-instruction. Dep. at 102, 112-13,

126.  The "mere fact" that plaintiff is over the age of forty does not establish discriminatory intent.  See Meckenberg v. New York City Off-Track Betting, 42 F. Supp. 2d 359, 373 (S.D.N.Y. 1999).  When asked if supervisor Christopher Bokini's statement to plaintiff, "[d]on't talk to me," was age related, plaintiff stated "I did not say it was an age related comment, I just said he made that comment."  Dep. at 89.  When asked whether the supervisors who allegedly called plaintiff "deep throat" were making age related comments, plaintiff replied only, "I don't think it is a pleasant way to address a fellow supervisor.  Id.  When asked why he believed the delays in hearing his appeals were due to age discrimination, plaintiff answered, "[h]ow many years does it take?"  Dep. at 96.

When asked about why he believed supervisors Nobile, Richards, Galarza or Ortiz discriminated against him based on his age, plaintiff's answers revealed no basis:

Q: What is the basis that you believe this evaluation was age discrimination?

A: It says right here in the rater's comments, "Supervisor is never sure of himself."

Q: What do you take this to mean?

A: Well, "never sure of himself," how could that be . . .

Q: Why do you believe it is age discrimination?

A: Well, that is my answer.  The answer to your question is do I believe it is age discrimination, my answer is yes, sir.

Q: Has Borough Manager Sherman Richards made any derogatory comment toward your age?

A: Not in my presence.

Q: Do you have reason to believe that he made derogatory comments about you when you weren't around?

A: Not to my knowledge as of today, sir.

Q: Did Galarza make any derogatory comments directed toward your age?

A: None that I can recall at the present time, sir.

18

> Q: Did Ortiz ever make any derogatory comments towards you about your age?
>
> A: Not to my knowledge at this time. I don't remember him saying anything at this time, sir.

Dep. at 97, 98, 102, 112, 118. When asked if Ortiz yelled at plaintiff based on age discrimination, plaintiff responded, "[w]ell, I don't know his mind set at that time, but it certainly wasn't an amicable way to talk to the people who are your subordinates." Dep. at 119. Personal speculation is insufficient to raise an inference of discrimination. Boise v. New York University, No. 03 Civ. 5862 (RWS), 2005 WL 2899853 (S.D.N.Y. November 3, 2005) (citing to Camerson v. Cmty. Aid for Retarded Children, Inc., 335 F.3d 60, 63 (2d Cir. 2003) (noting that "[p]urely conclusory allegations of discrimination are insufficient to defeat a motion for summary judgment).

Plaintiff's opposition to the motion for summary judgment is conclusory. Plaintiff essentially repeats the allegations contained in his complaint stressing the failure of the defendants to timely hear his appeals.[3] However, even acknowledging that plaintiff requested but never received appeal hearings regarding his 13 "below standards" performance evaluations, plaintiff fails to provide any evidence that this was motivated by impermissible age based discrimination. "The law is well established that conclusory statements, conjecture, or speculation are inadequate to defeat a motion for summary judgment." Woodman, 411 F.3d at 85

---

[3] In his opposition, plaintiff adds new claims regarding defendants' alleged failure to honor his requests to be transferred on March 13, 2003 and June 10, 2005. Plaintiff may not raise new claims for the first time in his opposition to defendants' motion. Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001) (new factual allegations may not be raised for the first time in opposing summary judgment). Therefore, the Court should not consider these new claims.

(internal citations and quotations omitted). Plaintiff fails to show that there is any evidence that would permit a rational fact finder to infer that his age was a motivating factor for defendants' actions. Defendants' motion for summary judgment should therefore be granted.

## V. Retaliation

To establish a *prima facie* case of retaliation under the ADEA, plaintiff must show that: (a) he engaged in a protected activity, (b) the employer was aware of that activity, (c) the employee suffered an adverse employment action, and (d) a causal connection existed between the protected activity and the adverse employment action. Kessler v. Westchester County Dep't Social Servs., 461 F.3d 199, 205 (2d Cir. 2006). In order to prevail on a claim for retaliation, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington No. and Santa Fe Rail Co. v. White, 548 U.S. 53, 126 S. Ct. 2405, 2415 (2006) (internal quotations omitted). However, "petty slights or minor annoyances that often take place at work and that all employees experience" fall outside the scope of the discrimination laws. Billings v. Town of Grafton, 515 F.3d 39, (2d Cir. 2008) (quoting White, 126 S. Ct. at 2415).

Plaintiff lists three "below standards" evaluations and two command disciplines he received after he filed his EEOC complaint on May 21, 2005 as evidence of retaliation. As discussed, *supra*, plaintiff suffered no adverse action as a result of the command disciplines. Therefore, they had no "affect [on] the employee's compensation, terms, conditions, or privileges

20

of employment." White, 126 S. Ct. at 2410-11.

Likewise, that plaintiff received three "below standards" evaluations after he filed his EEOC complaint on May 21, 2005 does not establish a claim for retaliation. Prior to the May 21, 2005 charge of discrimination, plaintiff had already received ten "below standards" evaluations. The Second Circuit has held that "where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 95 (2d Cir. 2001) (finding no evidence of retaliation where "the adverse employment actions were both part, and the ultimate product, of 'an extensive period of progressive discipline' which began when [defendant] diminished [plaintiff's] job responsibilities a full five months prior to his filing of the EEOC charges"). Nothing in the record causally connects plaintiff's "below standards" evaluations after he filed his EEOC complaint to the fact that he had filed an EEOC complaint.[4] Defendants are entitled to evaluate plaintiff as they see fit and plaintiff cannot insulate himself from a "below standards" evaluation by filing a discrimination complaint. Therefore, defendants' motion for summary judgment should be granted and plaintiff's retaliation claim should be dismissed.

---

[4] Similarly, the failure to provide plaintiff appeals of his performance evaluations does not evidence retaliation. While the Court does not condone defendants' failure to provide plaintiff his administrative appeals, there is no connection demonstrated between the denial of plaintiff's appeal and plaintiff's filing of an EEOC complaint. Plaintiff had requested appeals without result years before he filed the EEOC complaint.

## CONCLUSION

Accordingly, defendants' motion for summary judgment should be granted and plaintiff's complaint should be dismissed in its entirety.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the ten day period. Failure to file a timely objection to ths Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Services, 82 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140(1985).

SO ORDERED.

/S/

LOIS BLOOM
United States Magistrate Judge

Dated: March 27, 2008
       Brooklyn, New York